# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| STANFORD HEALTH CARE,<br><br>   Plaintiff,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF NORTH CAROLINA, INC.,<br><br>   Defendant. | Case No. 21-cv-04598-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS WITH PARTIAL LEAVE TO AMEND**<br><br>[Re: ECF No. 16] |

Before the Court is Blue Cross Blue Shield of North Carolina, Inc.'s ("BCBS") Motion to Dismiss Plaintiff Stanford Health Care's ("Stanford") First Amended Complaint. Stanford alleges that it provided medical services to members ("Patients") of BCBS, which provides health insurance, as an out-of-network provider. Stanford alleges that it billed BCBS, but BCBS paid for only a small fraction of these services. Stanford brings claims for (1) breach of implied contract and (2) quantum meruit against BCBS, alleging that BCBS's conduct—including an agreement it had with Anthem Blue Cross ("Anthem"), the verification of benefits and authorization of services it provided to Stanford regarding the Patients, and its partial payment for the services—obliged BCBS to pay Stanford for the services.

BCBS moves to dismiss for failure to state a claim under Rule 12(b)(6), arguing that Stanford fails to plead sufficient facts to show (1) mutual assent in support of its implied contract claim and (2) a specific request for services or a direct benefit to BCBS in support of its quantum meruit claim. *See* Motion, ECF No. 16; Reply, ECF No. 19. BCBS further moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) as to Stanford's claim regarding services it provided to one of the Patients, who was a member of the North Carolina State Health Plan. Stanford opposes,

1    arguing its pleadings are sufficient to state a claim and to meet its burden to show that this Court
2    has subject matter jurisdiction. *See* Opposition, ECF No. 18.

3    Based on the reasoning below, the Court GRANTS BCBS's 12(b)(1) motion WITH LEAVE
4    TO AMEND. Further, the Court GRANTS BCBS's 12(b)(6) motion, WITH LEAVE TO AMEND
5    for Stanford's implied contract claim and WITHOUT LEAVE TO AMEND for its quantum meruit
6    claim.

## I. BACKGROUND

8    Stanford is a nonprofit corporation incorporated in and having a principal place of business
9    in California. *See* First Amended Complaint ("FAC"), ECF No. 13 ¶ 1. It provides medical services
10   to patients. *See id.* BCBS is a corporation incorporated in and having a principal place of business
11   in North Carolina. *See id.* ¶ 2. BCBS is a voluntary employee benefits association organized under
12   26 U.S.C. § 501(c)(9), which provides health care benefits to its members. *See id.*

13   Stanford alleges that it entered into an agreement (the "Stanford-Anthem Agreement") with
14   Anthem as a provider of medically necessary care for the benefit of its members, enrollees, and
15   beneficiaries of health plans registered with Blue Cross as Payor, including BCBS. *See id.* ¶ 8.
16   Accordingly, Stanford alleges that it agreed to render medically necessary care to the members,
17   enrollees, and beneficiaries of BCBS's health plan in exchange for BCBS agreeing to pay Stanford
18   the discounted rates negotiated in the Agreement. *See id.* Stanford further alleges that BCBS had
19   an agreement with Anthem (the "BCBS-Anthem Agreement") to gain access to Anthem rates as a
20   Payor and for Anthem to act as an administrator for BCBS. *See id.* ¶ 9.

21   According to Stanford, it admitted into its facility and provided medical services to Patients.
22   *See id.* ¶ 12. BCBS verified that Patients were members of its health plan and authorized that
23   Stanford render medical services to them. *See id.* ¶¶ 10, 13. Stanford billed BCBS $258,812.50 for
24   the services, but BCBS only paid Stanford $19,165.93. *See id.* ¶ 16. Stanford seeks $239,648.10
25   plus interest in damages for the remaining sum that BCBS failed to pay. *See id.* ¶ 17. Alternatively,
26   Stanford seeks a balance of $153,804.35 based on the negotiated rates provided in the Stanford-
27   Anthem Agreement. *See id.* ¶ 25–26.

28   Stanford brings claims for (1) breach of implied-in-fact contract and (2) quantum meruit.

United States District Court
Northern District of California

1  *See id.* ¶¶ 18–34.  BCBS moves to dismiss both claims for failure to state a claim under
2  Rule 12(b)(6), arguing that none of the conduct Stanford alleges is sufficient to plead the existence
3  of an implied contract or the elements of quantum meruit.  *See* Motion, ECF No. 16 at 6–14.
4  Stanford opposes, arguing that (1) the conduct it alleges is sufficient to plead a breach of implied
5  contract claim or else equitable estoppel should apply and (2) that BCBS misconstrues the elements
6  of a quantum meruit claim in its favor.  *See* Opposition, ECF No. 18 at 6–14.

7  BCBS further seeks to dismiss Stanford's claim for lack of subject matter jurisdiction under
8  Rule 12(b)(1) as to services rendered to one particular patient—Patient C.H.  BCBS presents
9  evidence that the patient is a member of the North Carolina State Health Plan, and BCBS argues
10 that Stanford is accordingly required to allege administrative exhaustion as to her claim under the
11 North Carolina Administrative Procedure Act ("APA"), in order to adequately plead that this Court
12 has subject matter jurisdiction.  *See* Motion, ECF No. 16 at 14–17.  Stanford opposes, arguing that
13 BCBS has failed to provide sufficient evidence that Patient C.H. is a member of the North Carolina
14 State Health Plan and, in the alternative, that the Court should grant Stanford jurisdictional
15 discovery.  *See* Opposition, ECF No. 18 at 15–17.

16 **II.    LEGAL STANDARD**

17 **A.    Lack of Subject Matter Jurisdiction – Rule 12(b)(1)**

18 A party may challenge the Court's subject matter jurisdiction by bringing a motion to dismiss
19 under Federal Rule of Civil Procedure 12(b)(1).  A jurisdictional challenge may be facial or factual.
20 *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Where the attack is facial, the
21 Court determines whether the allegations contained in the complaint are sufficient on their face to
22 invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing
23 them in favor of the party asserting jurisdiction.  *Id.*; *see also Warth v. Seldin*, 422 U.S. 490, 501
24 (1975).  Where the attack is factual like in the present case, however, "the court need not presume
25 the truthfulness of the plaintiff's allegations."  *Safe Air for Everyone*, 373 F.3d at 1039.  In resolving
26 a factual dispute as to the existence of subject matter jurisdiction, the Court may review extrinsic
27 evidence beyond the complaint without converting a motion to dismiss into one for summary
28 judgment.  *Id.*  Once the moving party has made a factual challenge by offering affidavits or other

United States District Court
Northern District of California

evidence to dispute the allegations in the complaint, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

### B. Failure to State a Claim – Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a plaintiff has stated a claim, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

### C. Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4)

1    undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*,
2    316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the
3    greatest weight." *Id.* However, a strong showing with respect to one of the other factors may
4    warrant denial of leave to amend. *Id.*

**III.   DISCUSSION**

    **A.      12(b)(1) Motion**

BCBS moves to dismiss Stanford's claims as to services Stanford allegedly rendered to Patient C.H. for lack of subject matter jurisdiction under Rule 12(b)(1). *See* Motion, ECF No. 16 at 14–17. BCBS presents evidence that Patient C.H. was a member of the State Health Plan, for which BCBS is the third-party claims administrator. *See* Declaration of Aimee Forehand ("Forehand Decl."), ECF No. 16-1 ¶¶ 3–6; *id.*, Ex. 1. BCBS further presents evidence that BCBS does not insure benefits or retain insurance risk—rather, only the State Health Plan retains that risk. *See* Forehand Decl., ECF No. 16-1, Ex. 1 at 1 ("Blue Cross NC provides administrative services only and does not assume any financial risk or obligation with respect to claims."); *id.* ("Your health benefit plan is offered under a Blue Options *Plan* administered by Blue Cross and Blue Shield of North Carolina (Blue Cross NC)."); *id.* at 108; Forehand Decl., ECF No. 16-1 ¶ 6 ("[BCBS] is the third-party claims administrator of the State Health Plan. In that capacity, [BCBS] does not insure benefits or retain the insurance risk. Instead, the State Health Plan is the entity that retains that risk. [BCBS]'s only role is to provide claim administrative services to the State Health Plan in exchange for an administrative fee."). BCBS's evidence includes the Declaration of Aimee Forehand and the patient Benefits Booklet for the North Carolina State Health Plan. *See* Forehand Decl., ECF No. 16-1; *id.*, Ex. 1.

BCBS argues that Stanford fails to adequately plead that this Court has subject matter jurisdiction regarding Stanford's claims related to its services to Patient C.H. *See* Motion, ECF No. 16 at 14–17. BCBS argues that under North Carolina law, a party that seeks to bring claims against a state agency or its agents must be exhausted under the APA via a petition for a contested case before the North Carolina Office of Administrative Hearings ("OAH"). *See id.* According to BCBS, it was acting as an agent for the State of North Carolina as to Patient C.H., so

in order to state a claim for payment for services to that patient, Stanford must allege administrative exhaustion or the futility or inadequacy of the administrative remedy. *See id.* Since Stanford does not do so, BCBS argues that it fails to state a claim for payment regarding services to Patient C.H. *See id.* In response, Stanford argues that BCBS offers no evidence that it is acting as an agent of the State Health Plan. *See* Opposition, ECF No. 18 at 15–16. Further, Stanford argues that the terms of the patient Benefits Booklet do not apply to Stanford, who is not a party to those terms. *See id.* at 16–17.

The Court agrees with BCBS. BCBS has proffered sufficient evidence to meet its burden for challenging that this Court has subject jurisdiction over Stanford's claim as to the services it provided to Patient C.H. *See St. Clair*, 880 F.2d at 201. BCBS has provided evidence that it serves as the administrator for the North Carolina State Health Plan, and it "does not assume any financial risk or obligation with respect to claims" under the arrangement. Forehand Decl., ECF No. 16-1, Ex. 1 at 1. Further, BCBS has adequately shown that under North Carolina law, before a party can bring an action in court against the state or its agents, it must exhaust administrative remedies, or else plead that it is excused from the exhaustion requirement due to the inadequacy of futility of administrative remedies. *See Jackson v. N.C. Dep't of Human Res. Div. of Mental Health, Devel. Disabilities & Substance Abuse Servs.*, 131 N.C.App. 179, 186 (1998); *Huang v. N.C. State Univ.*, 107 N.C.App. 710, 715 (1992). Since Stanford has failed to allege any facts regarding administrative remedies, the Court finds that BCBS has met its burden in challenging the Court's subject matter jurisdiction over Stanford's claims regarding the services it provided to Patient C.H. *See* FAC, ECF No. 13.

In response, Stanford provides no evidence and raises several unavailing challenges to BCBS's evidence. First, Stanford argues that BCBS's argument is based on "conjecture and conclusionary statements" and that BCBS offers "no evidence that [BCBS] is acting as an agent of the State Health Plan." Opposition, ECF No. 18 at 15–16. The Court is puzzled by these arguments, because BCBS presents both a declaration and the patient Benefits Booklet document in support of its 12(b)(1) motion. Such evidence is proper for the Court to consider with a 12(b)(1) motion. *See Safe Air for Everyone*, 373 F.3d at 1039. Second, Stanford argues that its claims are not based on

6

1  the patient Benefits Booklet and it would have to step into the shoes of the patient for the terms of
2  this document to apply, but it is not pursuing payment on behalf of the Patients. *See* Opposition,
3  ECF No. 18 at 16.  The Court disagrees.  The patient Benefits Booklet is presented as evidence of
4  the fact that BCBS is merely an administrator for the North Carolina State Health Plan.  The Court
5  does not see why Stanford would have to "step[] in the shoes of the patient" for this document to
6  serve as evidence that BCBS is an administrator for the North Carolina plan, and BCBS also presents
7  the Forehand Declaration as further evidence. *See* Forehand Decl., ECF No. 16-1.  Third, Stanford
8  argues that its claims are filed against BCBS—not the North Carolina State Health Plan. *See*
9  Opposition, ECF No. 18 at 16–17.  BCBS has presented evidence and caselaw to show why this
10 argument is unavailing—BCBS "does not assume any financial risk or obligation with respect to
11 claims," so Stanford can only recover from the State Health Plan, which requires it to plead facts
12 related to administrative exhaustion that are absent from the First Amended Complaint.
13 Forehand Decl., ECF No. 16-1, Ex. 1 at 1.

14 Accordingly, the Court GRANTS BCBS's 12(b)(1) motion as to Stanford's claims regarding
15 services it allegedly provided to Patient C.H.

### B. Request for Leave to Conduct Jurisdictional Discovery

17 Stanford argues that it should be granted leave to conduct jurisdictional discovery regarding
18 Patient C.H. and BCBS's relationship to the State Health Plan. *See* Opposition, ECF No. 18 at 17.
19 BCBS does not oppose. *See* Reply, ECF No. 19.

20 "A district court is vested with broad discretion to permit or deny discovery, and a decision
21 to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery
22 results in actual and substantial prejudice to the complaining litigant." *Laub v. U.S. Dep't of
23 Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quotation marks and citation omitted).  The Ninth
24 Circuit has stated that jurisdictional discovery "should ordinarily be granted where pertinent facts
25 bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the
26 facts is necessary." *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC
27 Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (internal quotation omitted).  However, a court may
28 deny a request to conduct jurisdictional discovery if "it is clear that further discovery would not

demonstrate facts sufficient to constitute a basis for jurisdiction." *Laub*, 342 F.3d at 1093 (quotation marks omitted).

While BCBS does not oppose Stanford's request for jurisdictional discovery, Stanford has presented no facts to indicate that jurisdictional discovery could potentially lead to facts sufficient to overcome BCBS's jurisdictional challenge. Accordingly, the Court DENIES Stanford's request for jurisdictional discovery.

\* \* \*

Although Stanford has not suggested it has additional facts to allege regarding exhaustion, futility, or inadequacy of administrative remedies, leave to amend is granted on this limited issue. Jurisdictional discovery was not requested on this issue and it appears Stanford would be in control of such facts, if they exist.

### C.   12(b)(6) Motion

BCBS moves to dismiss both of Stanford's claims—for (1) breach of implied contract and (2) quantum meruit. *See* Motion, ECF No. 16 at 6–14. Stanford opposes. *See* Opposition, ECF No. 18 at 4–14. The Court considers each of Stanford's claims in turn.

#### 1.   Breach of Implied Contract (Claim 1)

BCBS moves to dismiss Stanford's claim for breach of implied contract. *See* Motion, ECF No. 16 at 6–11. "The essential elements of a breach of contract claim are the existence of an enforceable contract, the defendant's breach, and damages to the plaintiff caused by the breach," as well as the plaintiff's performance or excuse for nonperformance under the contract. *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 & n.33 (9th Cir. 2017). The existence of a contract requires (1) parties capable of contracting, (2) their consent, (3) a lawful object, and (4) a sufficient cause or consideration. Cal. Civ. Code § 1550. A contract is either express or implied. Cal. Civ. Code. § 1619. The existence and terms of an implied contract are manifested by conduct. Cal. Civ. Code § 1621; *see Silva v. Providence Hosp. of Oakland*, 14 Cal.2d 762, 773–74 (1939). "An implied-in-fact contract requires proof of the same elements necessary to evidence an express contract: mutual assent or offer and acceptance, consideration, legal capacity and lawful subject matter." *Northstar Fin. Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1050–51 (9th Cir.

2015). Mutual assent "is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *DeLeon v. Verizon Wireless, LLC*, 207 Cal.App.4th 800, 813 (2012) (citation omitted). "[A] party's subjective intent, or subjective consent, therefore is irrelevant." *Stewart v. Preston Pipeline Inc.*, 134 Cal.App.4th 1565, 1587, 36 Cal.Rptr.3d 901 (2005) (internal quotation marks and citation omitted).

      a. Verification of Benefits, Authorization of Services, and Partial Payment

Stanford alleges that BCBS should be found in breach of an implied contract based on the totality of its conduct—primarily, the fact that BCBS verified that Patients were enrolled in a BCBS health plan, it authorized the services that Patients were requesting from Stanford, and it partially paid for those services. *See* FAC, ECF No. 13 ¶¶ 10–17; Opposition, ECF No. 18 at 9–12. BCBS argues that Stanford fails to adequately allege mutual assent, because courts have found verification of benefits and authorization of services to be insufficient to plead an implied contract claim. *See* Motion, ECF No. 16 at 7–8. In response, Stanford argues that courts have found authorization and verification of coverage may form an agreement, including when accompanied by partial payment. *See* Opposition, ECF No. 18 at 9–11. Furthermore, Stanford argues that it does not need to allege mutual assent on price. *See id.* at 11–12. On reply, BCBS argues that courts have specifically rejected Stanford's partial payment theory. *See* Reply, ECF No. 19 at 7–8.

The Court agrees with BCBS. The caselaw does not support Stanford's position that verification of benefits and authorization of services are sufficient to plead mutual assent for an implied contract claim. *See Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*, 12 Cal.App.5th 200, 216 (2017) ("These allegations lack the specific facts required for us to determine there was any meeting of the minds between the parties. At best, [provider's] allegations show that [insurer] admitted that the subscriber was covered under one of its health plans and that it would pay something for [provider's] treatment of the subscriber."); *Aton Ctr., Inc. v. Blue Cross and Blue Shield of N.C.*, No. 3:20–cv–00492–WQH–BGS, 2020 WL 4464480, at *3 (S.D. Cal. Aug. 3, 2020) ("VOB and authorization phone calls alone are generally insufficient to form the basis for an oral or implied contract because they lack a manifestation of intent to enter into a contract.");

9

*TML Recovery, LLC v. Humana Inc.*, No. SACV 18–00462 AG (JDEx), 2019 WL 3208807, at *4 (C.D. Cal. Mar. 4, 2019) (dismissing implied contract claim where "Plaintiffs allege that they verified the patients' benefits and obtained authorization as necessary"); *Namdy Consulting, Inc. v. UnitedHealthcare Ins. Co.*, No. 18–01283–RSWL–KS, 2018 WL 6507890, at *4 (C.D. Cal. Dec. 7, 2018) (dismissing implied contract claim where allegations included that insurer defendant "authorized the treatment when called and made payments towards treatment"); *see also Cmty. Hosp. of the Monterey Peninsula v. Aetna Life Ins. Co.*, 119 F.Supp.3d 1042, 1049 (N.D. Cal. 2015) ("[I]t would have been unreasonable for [provider] to expect that [insurer's] authorization constituted a promise to pay 100 percent of billed charges.")

Courts have found that plaintiffs can state a claim by pleading *more* than verification of benefits and authorization of services. *See Aton Ctr.*, 2020 WL 4464480, at *4 (collecting cases). But Stanford's threadbare allegations are remote from the pleadings courts have found to be sufficient to allege the additional facts necessary to state an implied contract claim. *See, e.g., Bristol SL Holdings, Inc. v. Cigna Health Life Ins. Co.*, No. SACV 19–00709 AG (ADSx), 2020 WL 2027955, at *3 (C.D. Cal. Jan. 6, 2020) ("For each patient, Bristol alleges what type of treatment was being sought and how long the course of treatment was expected to last, along with extensions of time and requests to follow up. Bristol further alleges a specific billing rate pegged to a percentage of the usual, customary and reasonable rate, and alleges a different rate depending on whether or not the patient had met his or her out-of-pocket maximum. In each of the follow-up calls, Sure Haven was ensured the payment would be made at the previously agreed upon rate."); *Cal. Spine & Neurosurgery Inst. v. United Healthcare Servs., Inc.*, No. 18–CV–2867 PSG (AFM), 2018 WL 6074567, at *4 (C.D. Cal. June 28, 2018) ("The facts alleged include specific names and dates of the calls between Plaintiff and Defendant regarding payment for Patient's services, what the services would be, what was said, and by whom—including that Defendant agreed to pay a specific price[.]"). Courts have even dismissed claims supported by additional allegations not included in Stanford's complaint. *See, e.g., TML Recovery*, 2019 WL 3208807, at *4 (dismissing implied contract claim where plaintiffs point to trade custom and prior course of dealing).

Stanford argues that its allegations about BCBS's partial payment for the medical services

at issue in this case is sufficient to allege mutual assent. But courts have rejected this theory, even going so far as to find that partial payment undermines the inference of mutual assent between the parties. *See Pac. Bay Recovery*, 12 Cal.App.5th at 216 ("The fact that [insurer] only paid for six of the 31 days of treatment undermines [provider's] claim that the parties ever agreed to the same contractual terms. . . . Thus, the allegations in the FAC, based on [insurer's] payment of some of the invoices, do[] not exhibit any mutual intent as to the essential terms of the implied contract."); *see also Aton Ctr., Inc. v. Blue Cross & Blue Shield of N.C.*, No. 3:20–cv–00492–WQH–BGS, 2021 WL 321981, at *1, *5 (S.D. Cal. Feb. 1, 2021); *Namdy Consulting*, 2018 WL 6507890, at **4–5; *see also Gateway Rehab & Wellness Ctr., Inc. v. Aetna Health of Cal., Inc.*, No. SACV 13–0087–DOC (MLGx), 2013 WL 1518240, at *3 (C.D. Cal. Apr. 10, 2013) (rejecting argument that "by reimbursing [plaintiff] from January 2007 to May 2010, Defendant created an implied contract to continue to reimburse it").

Stanford points to the *San Joaquin General Hospital* case in support of the adequacy of its allegations related to its implied contract claim. *See San Joaquin Gen. Hosp. v. United Healthcare Insurance Co.*, No. 2:16–cv–01904–KJM–EFB, 2017 WL 1093835 (E.D. Cal. Mar. 23, 2017). The court in *San Joaquin General Hospital* found allegations of verification of benefits, authorization of services, and partial payment by an insurer for its patients' out-of-network medical services to be sufficient to plead an implied contract claim. *See id.* at *3. However, as BCBS points out, this is the only case of its kind Stanford points to—otherwise, the caselaw almost unanimously indicates that the kinds of facts Stanford alleges here are insufficient to state a claim for implied contract, as outlined above. *See* Reply, ECF No. 19 at 8 n.2. The Court further notes that Judge Koh found similar claims to be sufficient to state an implied contract claim in *Summit Estate*. *See Summit Estate, Inc. v. Cigna Healthcare of Cal.*, No. 17–CV–03871–LHK, 2017 WL 4517111, at **3–4 (N.D. Cal. Oct. 10, 2017). Accordingly, there is precedent for Stanford's position in this district, and the several summary judgment cases BCBS cites imply that other courts have found similar claims to at least make it past the pleading stage. *See, e.g., Stanford Hosp. and Clinics v. Multinational Underwriters, Inc.*, No. C–07–05497 JF (RS), 2008 WL 5221071, at *6 (N.D. Cal. Dec. 12, 2008); *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*, 520 F.Supp.2d 1184,

11

1192–95 (C.D. Cal. 2007). Nonetheless, given Stanford's threadbare allegations, the Court sides with the majority of courts that have found similar claims involving verification of benefits, authorization of services, and partial payment to have inadequate support to survive a motion to dismiss.

Stanford also argues that BCBS misconstrues the caselaw by arguing that an implied contract claim requires a showing of mutual assent as to the price. *See* Opposition, ECF No. 18 at 11–12. The Court is perplexed by Stanford's argument, as it is unclear where BCBS made this argument in the first place. BCBS's argument is that mutual assent is a general requirement of a contract claim, and that Stanford has not adequately alleged mutual assent here in light of the caselaw. The Court agrees with BCBS. To the extent Stanford is arguing that mutual assent is not required for pleading a breach of implied contract claim, the Court disagrees. *See* Cal. Civ. Code § 1550; *Northstar Fin. Advisors*, 779 F.3d at 1050–51.

Accordingly, the Court finds that Stanford has failed to adequately plead a breach of implied contract claim based on its allegations regarding BCBS's verification of benefits, authorization of services, and partial payment regarding Stanford's alleged services to BCBS-insured patients.

### b. Anthem Agreements

Stanford further alleges that BCBS breached an implied contract because (1) Stanford had an agreement with Anthem to render medically necessary care to BCBS members in exchange for BCBS (as a Payor) paying discounted rates negotiated in the agreement and (2) BCBS had an agreement with Anthem Blue Cross to gain access to those discounted rates as a Payor in exchange for paying for services rendered to its members by Stanford. *See* FAC, ECF No. 13 ¶¶ 8–9. BCBS argues that the Stanford-Anthem Agreement does not give rise to an implied contract for BCBS to pay Stanford for the alleged services, because BCBS is a stranger to that agreement. *See* Motion, ECF No. 16 at 8–11. BCBS further argues that its alleged access to the negotiated rates in the Stanford-Anthem Agreement has been found by other courts to be insufficient to give rise to an implied contract. *See id.* at 9–10. Additionally, BCBS argues that Stanford's allegations about a BCBS-Anthem Agreement is pure conjecture. *See id.* at 9 n.1. In response, Stanford argues that the totality of BCBS's alleged conduct—the BCBS-Anthem Agreement, BSBC's authorization of

12

services, and partial payment for those services—are sufficient to support Stanford's implied contract claim. *See* Opposition, ECF No. 18 at 6, 8.

The Court agrees with BCBS. The Court agrees with the many courts that have found similar agreements to be insufficient to create an implied contract for an insurer to pay for out-of-network services. *See St. Vincent Med. Ctr. v. Mega Life & Health Ins. Co.*, No. 2:12–cv–02694–SVW–CW, 2012 WL 3238510, at *3 (C.D. Cal. July 24, 2012) ("A health care service plan [e.g., Plaintiff] may contract with an intermediary [e.g., First Health] to furnish covered benefits to subscribers.... Under this arrangement, the intermediary contracts with doctors and hospitals [e.g., Defendant] to provide the requisite services. The [health care service plan] has no direct contractual relationship with the medical providers and is not obligated to pay them for their services.") (alterations in original), *aff'd*, 585 Fed.Appx. 417, 417–18 (9th Cir. 2014) ("St. Vincent has failed to explain why it should be excepted from the California rule that only a party to a contract may be sued on that contract."); *Sharp Memorial Hosp. v. Regence BlueCross BlueShield of Utah*, No. 16cv2493 JM (RNB), 2018 WL 3993359, at *5 (S.D. Cal. Aug. 21, 2018) (rejecting implied contract claim where insurer defendant has "access [to] discounted rates in the Blue Shield Agreement as an 'Other Payor'"). Further, the Court finds BCBS's point compelling that to the extent a contractual arrangement existed between BCBS and Stanford based on the written agreements Stanford points to, an implied contract cannot govern the same relationship under California law. *See* Motion, ECF No. 16 at 11; *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). Stanford fails to respond to this point. Accordingly, the Court finds Stanford's argument that an implied contract between BCBS and Stanford existed based on the alleged Stanford-Anthem and BCBS-Anthem Agreements is unavailing.

Regarding Stanford's argument that the totality of circumstances supports its claim that BCBS was subject to an implied contract, the Court disagrees. The tenuous multi-contract arrangement Stanford alleges, which courts have found to be insufficient to create an implied contractual relationship, is far less than what courts have considered sufficient to elevate allegations like Stanford's above the pleading standard. *See Aton Ctr.*, 2020 WL 4464480, at *4 (collecting cases).

Stanford further argues that BCBS acquiesced to an arrangement where BCBS reimburses Stanford based on its agreement with Anthem Blue Cross due to BCBS's participation in the BlueCard Program. *See* Opposition, ECF No. 18 at 6. As support, Stanford attaches a copy of BCBS's Provider Manual to its Opposition. *See* Declaration of Shadi Shayan, Esq., ECF No. 18, Ex. A. Stanford did not include any allegations about the BlueCard Program or BCBS's Provider Manual in its complaint, and it does not seek judicial notice of any of these facts or materials in its Opposition. Accordingly, the Court declines to consider these materials, since they are improperly before the Court at this stage. *See N. Star Int'l*, 720 F.2d at 581 ("We need not reach issues for which there is no foundation in the complaint.").

* * *

Finding Stanford's allegations insufficient to establish the existence of an implied contract, the Court GRANTS BCBS's Motion to Dismiss Stanford's claim for breach of an implied contract. The Court has significant reservations about Stanford's implied contract claim given the lack of allegations supporting mutual assent and the fact that the majority of courts that have considered similar claims have dismissed them. However, since this is the Court's first dismissal of Stanford's claims, and some courts have found allegations similar to Stanford's with additional factual detail to be sufficient to meet the pleading standard, the Court's dismissal of Stanford's claim is WITH LEAVE TO AMEND.

### 2. Equitable Estoppel

In its Opposition, Stanford argues that BCBS should be equitably estopped from availing itself of the rates set forth in the Stanford-Anthem Agreement and claiming it is a "stranger" to that contract. *See* Opposition, ECF No. 13 at 8–9. In response, BCBS argues that Stanford's equitable estoppel claim fails because it was not alleged in the Complaint. *See* Reply, ECF No. 19 at 8. Further, BCBS argues that courts have rejected Stanford's estoppel argument. *See id.* at 8–9.

The Court agrees with BCBS. Stanford did not plead a claim for promissory estoppel. *See* FAC, ECF No. 13. If Stanford wishes to assert a claim for promissory estoppel against BCBS, then it will need to move for leave to amend its complaint to assert the additional promissory estoppel claim.

14

### 3. Quantum Meruit (Claim 2)

BCBS further moves to dismiss Stanford's claim for quantum meruit. *See* Motion, ECF No. 16 at 11–14. Quantum meruit "refers to the well-established principle that the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered." *Huskinson & Brown v. Wolf*, 32 Cal.4th 453, 458 (2004) (citation omitted). A contract need not actually exist, but there must be circumstances indicating that "the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made." *Port Med. Wellness, Inc. v. Conn. Gen. Life Ins. Co.*, 24 Cal.App.5th 153, 180 (2018) (citing *Huskinson & Brown*, 32 Cal.4th at 458). The elements of a quantum meruit claim are "(1) that the plaintiff performed certain services for the defendant, (2) their reasonable value, (3) that they were rendered at defendant's request, and (4) that they are unpaid." *Fudy Printing Co. v. Aliphcom, Inc.*, No. 17–cv–03863–JSC, 2019 WL 2180221, at *4 (N.D. Cal. Mar. 7, 2019) (citation omitted).

#### a. Specific Request for Services

BCBS argues that Stanford fails to adequately plead a quantum meruit claim because it fails to allege that BCBS made a specific request for the services at issue, which courts require, particularly when the services at issue are provided to a third party. *See* Motion, ECF No. 16 at 12–13. BCBS argues that Stanford's allegations that BCBS confirmed coverage and authorized treatment are insufficient to plead a specific request. *See id.* at 12. In response, Stanford argues that a quantum meruit claim does not require pleading a specific request for services, because it would "defeat the purpose" of a common count like quantum meruit. *See* Opposition, ECF No. 18 at 12–14. Stanford provides the example of an emergency room patient in an unconscious state who later dies without regaining consciousness. *See id.* at 13. Stanford asserts that the hospital would be able to recover under quantum meruit, but BCBS's purported "specific request" requirement would bar that recovery. *See id.* On reply, BCBS argues that Stanford ignores a wealth of caselaw requiring a specific request. *See* Reply, ECF No. 19 at 9–11.

The Court agrees with BCBS. BCBS has pointed to ample caselaw indicating that Stanford must plead that BCBS explicitly or impliedly requested the services at issue in order to plausibly

15

allege a quantum meruit claim. *See Aton Ctr., Inc. v. Regence Blue Shield of Wash.*, No. 3:20–cv–00498–WQH–BGS, 2020 WL 4747754, at \*\*6–7 (S.D. Cal. Aug. 17, 2020) ("The Complaint fails to allege sufficient facts to establish that Plaintiff 'was acting pursuant to either an express or implied request for ... services from [ ] [D]efendant ....'") (quoting *Day v. Alta Bates Med. Ctr.*, 98 Cal.App.4th 243, 248 (2002)) (alterations in original); *Summit Estate*, 2017 WL 4517111, at \*11 (dismissing quantum meruit claim where "Plaintiff does not allege that Defendants explicitly requested Plaintiff to provide substance abuse treatment services to the patients insured under policies issued by Defendants"); *Namdy Consulting*, 2018 WL 6507890, at \*3; *ABC Servs. Grp., Inc. v. Health Net of Cal., Inc.*, No. SA CV 19–00243–DOC–DFM, 2020 WL 2121372, at \*7 (C.D. Cal. May 4, 2020) (dismissing quantum meruit claim where "Plaintiff does not allege that any Moving Defendant *requested* that Plaintiff treat any of the Patients (as opposed to *authorizing* treatment and verifying benefits)") (emphasis in original).

Since BCBS's patients allegedly requested the services at issue in this case, and Stanford allegedly initiated contact with BCBS to verify coverage and seek authorization, Stanford has not adequately alleged that BCBS requested the services at issue. *See Cal. Spine & Neurosurgery Inst. v. United Healthcare Ins. Co.*, No. 19–CV–02417–LHK, 2020 WL 887833, at \*4 (N.D. Cal. Feb. 24, 2020) ("Such allegations are fatal to Plaintiff's quantum meruit claim, as Plaintiff explicitly pleads that any authorization provided by Defendant was only made in response to Plaintiff's request."); *Pac. Bay Recovery*, 12 Cal.App.5th at 215 (dismissing quantum meruit claim where plaintiff pled "conclusory allegations that [insurer] requested [plaintiff] treat the subscriber"); *Summit Estate*, 2017 WL 4517111, at \*11; *Namdy Consulting*, 2018 WL 6507890, at \*4 (dismissing quantum meruit claim based on theory that "where a patient enters the Emergency Room or requests emergency or post stabilization treatment, the Defendant has by implication requested that the physician concerned will treat that Patient and that Defendant will pay for those services") (internal quotation marks and alterations omitted); *see also Cmty. Hosp. of the Monterey Peninsula*, 119 F.Supp.3d at 1049 ("No reasonable jury could conclude that [provider] 'performed services at [insurer's] request,' when in fact [provider] initiated contact with [insurer] as to authorization."); *Sharp Memorial Hosp.*, 2018 WL 3993359, at \*5 ("[Insurer's] authorization of seven days of

1  treatment does not constitute a request by [insurer] for [provider] to perform services.").

2  The only contrary case Stanford can point to is the *San Joaquin General Hospital* case. *See San Joaquin Gen. Hosp.*, 2017 WL 1093835, at *3 ("[T]he court may reasonably infer from the Hospital's pleadings that United Insurance implicitly requested the Hospital's services by authorizing them and partially paying for them."). The Court acknowledges that the court in *San Joaquin General Hospital* found allegations similar to those in the present case to be sufficient to state a quantum meruit claim. However, *San Joaquin General Hospital* is a single case from a court outside of this district—it is substantially outweighed by multiple cases dismissing similar quantum meruit claims in the Northern District and California state courts, as outlined above. Stanford also points to the *Rubinstein v. Fakheri* case for the general principle that a plaintiff does not have to plead the language "at defendant's special instance and request" to state a claim for quantum meruit, since this is not the only basis for an implied promise. *See Rubinstein*, 49 Cal.App.5th 797, 810–11 (2020). But regardless of whether that language is pled, several courts have found that alleging a request for services by an insurer's patients followed by verification of benefits and authorization of services initiated by the provider is insufficient to plead either an express or an implied request. *See Namdy Consulting, Inc. v. UnitedHealthcare Ins. Co.*, No. 18–01283–RSWL–KS, 2018 WL 6430119, at *3 ("Where, as here, the patient initiates the request for treatment and the hospital contacts the insurer for authorization, the insurer makes no express or implied request.") (quoting *Cmty. Hosp.*, 119 F.Supp.3d at 1051–52); *Aton Ctr.*, 2020 WL 4747754, at *6 ("A single verification phone call made by a plaintiff fails to establish an implied request for services by a defendant."); *see also Cedars Sinai Med. Ctr. v. Mid-West Nat. Life Ins. Co.*, 118 F.Supp.2d 1002, 1013 (C.D. Cal. 2002) ("Because [insurer] did not request, either expressly or impliedly, that [provider] treat [patient], it is not liable to [provider] under quantum meruit theory.").[1]

Stanford further invokes public policy, arguing that if a quantum meruit claim requires a

---

[1] Stanford also cites *Bell v. Blue Cross of Cal.*, 131 Cal.App.4th 211 (2005). The Court agrees with BCBS that this case is inapposite, since it involves emergency care and a California statute not at issue in this case. *See id.* at 221; Reply, ECF No. 19 at 11 n.5.

1    specific request for services, then when Stanford treats an unconscious patient in need of emergency
2    services (whom Stanford is under a duty to treat), Stanford cannot seek reasonable payment for the
3    services from the patient's insurer if the patient is out-of-network.  *See* Opposition, ECF No. 18
4    at 13.  The Court notes that based on Stanford's pleadings, the situation it raises is a hypothetical
5    not before the Court, since Stanford has not adequately pled that any of the specific services in this
6    case involved emergency care or an unconscious patient.  *See* FAC, ECF No. 13 ¶ 21 (generally
7    pleading that the services at issue included "emergency services" without specifying the relevant
8    patients or claims).  Further, the Court notes that its role is not to make public policy, but rather to
9    apply the law to the facts of the case.  And based on Stanford's pleadings and well-established
10   principles of quantum meruit reiterated by many courts, Stanford's quantum meruit claim cannot
11   proceed forward based on Stanford's factual allegations.

12   Accordingly, the Court finds that Stanford has failed to adequately plead a claim for quantum
13   meruit due to its failure to allege that BCBS made a specific request for the medical services at issue
14   here.

15       b.   Benefit to BCBS

16   BCBS further argues that Stanford's quantum meruit claim fails because Stanford has only
17   alleged that its services benefited the Patients—not BCBS itself.  *See* Motion, ECF No. 16 at 13–14.
18   BCBS argues that courts have dismissed quantum meruit under similar factual circumstances.  *See*
19   *id.*  In response, Stanford argues that (1) it does not need to plead that BCBS benefited directly from
20   Stanford's services and (2) it *has* plausibly pled a benefit to BCBS, because services rendered to a
21   patient plausibly benefit the patient's health plan, because the health plan would no longer have to
22   pay for the patient's services somewhere else.  *See* Opposition, ECF No. 18 at 12–14.  On reply,
23   BCBS argues that the benefit Stanford points to is at best a "remote and incidental benefit,"
24   insufficient for pleading quantum meruit.  *See* Reply, ECF No. 19 at 11–12.

25   The Court agrees with BCBS.  The caselaw supports that in order to plausibly plead a
26   quantum meruit claim, Stanford must allege that BCBS received a direct benefit.  *See Armijo v.*
27   *ILWU-PMA Welfare Plan*, No. CV–15–01403–MWF (VBKx), 2015 WL 13629562, at *24
28   (C.D. Cal. Aug. 21, 2015) (citing *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,

94 Cal.App.4th 151, 156 (2001)); *see also Day*, 98 Cal.App.4th at 248 ("The idea that one must be *benefited* by the goods and services bestowed is thus integral to recovery in quantum meruit; hence courts have always required that the plaintiff have bestowed some benefit on the defendant as a prerequisite to recovery.") (citation omitted). Stanford can only plausibly allege a direct benefit to BCBS's members, which courts have consistently found not to be sufficient for a quantum meruit claim. *See IV Sols., Inc. v. United HealthCare Servs., Inc.*, No. CV 16–09598–MWF (AGRx), 2017 WL 3018079, at *11 (C.D. Cal. July 12, 2017) ("[I]t was [insurer's] members, not [insurer] itself, who benefitted from [provider's] services"); *Armijo*, 2015 WL 13629562, at *24.

Stanford argues that the direct benefit that BCBS enjoyed is that its members' services were provided, and if they were not provided by Stanford, they would need to be provided elsewhere. *See* Opposition, ECF No. 18 at 14. Like many courts before it, this Court does not find Stanford's proffered "benefit" to BCBS to be sufficient to support a quantum meruit claim. Again, the only case Stanford points to is the *San Joaquin General Hospital* case, and it appears to be an outlier. *See San Joaquin Gen. Hosp.*, 2017 WL 1093835, at *3 ("It is also plausible that because United Insurance would no longer have to pay for the patients to receive the same services elsewhere, United Insurance benefited from the Hospital's services.").

The Court also notes that the court in *Regents of the University of California v. Principal Financial Group* found at the summary judgment stage that a medical provider's claim against an insurer similar to the one in this case is not barred by the fact that the direct beneficiary was an insured patient—not the insurer. *See Regents*, 412 F.Supp.2d 1037, 1047 (N.D. Cal. 2006). The court in that case cited *Earhart v. William Low Co.*, in which the California Supreme Court held that "performance of services at another's behest may itself constitute 'benefit' such that an obligation to make restitution may arise." *Earhart*, 25 Cal.3d 503, 511 (1979). The Court notes that since *Regents*, several courts have found that medical service providers' quantum meruit claims against insurers fail where the only benefit alleged is to patients. *See Armijo*, 2015 WL 13629562, at *24; *IV Sols.*, 2017 WL 3018079, at *11. Further, the Court notes that *Earhart* only held that performance of services at another's behest *may* constitute a benefit sufficient for a quantum meruit claim. *See Earhart*, 25 Cal.3d 503, 511. The Court finds that even if Stanford's "benefit" theory is

19

not foreclosed by the caselaw, Stanford's minimal allegations regarding how Stanford's services to Patients were to BCBS's benefit are insufficient to adequately plead quantum meruit. *See* FAC, ECF No. 13 ¶ 32.

* * *

Accordingly, the Court finds that Stanford has inadequately pled a claim for quantum meruit. The Court sees no way for Stanford to get around the gaps in its quantum meruit allegations through amendment, particularly its inability to plead an explicit or implied request for medical services on the part of BCBS. Therefore, the Court finds that amendment of Stanford's quantum meruit claim would be futile, and the Court DISMISSES the claim WITHOUT LEAVE TO AMEND. *See Eminence Capital*, 316 F.3d at 1052.

## IV.  ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. All claims based on Stanford's alleged services to Patient C.H. are DISMISSED WITH LEAVE TO AMEND for lack of subject matter jurisdiction;

2. Stanford's request for jurisdictional discovery is DENIED;

3. Stanford's breach of implied contract claim (Claim 1) is DISMISSED WITH LEAVE TO AMEND;

4. Stanford's quantum meruit claim (Claim 2) is DISMISSED WITHOUT LEAVE TO AMEND; and

5. Stanford SHALL have 30 days from the date of this Order to file a Second Amended Complaint.

Dated: January 21, 2022

_____
BETH LABSON FREEMAN
United States District Judge